# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IRVING JONES, | * |
| Plaintiff | * |
| v. | *   Civil Action No. PWG-18-2568 |
| WICOMICO COUNTY DETENTION CENTER, | * |
| WARDEN RUTH COLBOURNE, DEPUTY TYLER, | * |
| COLONEL KIMBLE, DAWN CHEWNING, | * |
| C.O. GARDNER, C.O. RICHARDSON,[1] | * |
| | * |
| Defendants | |

*****

## MEMORANDUM OPINION

Plaintiff Irving Jones, a Maryland state prisoner, formerly confined at the Wicomico County Detention Center ("WCDC") filed this action under 42 U.S.C. § 1983 against the Wicomico County Detention Center, Warden Ruth Colbourne, Deputy Tyler, Colonel Kimble, Nurse Dawn Chewning, Correctional Officer Gardner, and Correctional Officer Richardson. Comp. 1, ECF No. 1; Am. Compl., ECF No. 6.[2] Jones claims that while he was incarcerated at WCDC he was forced to eat with the same plastic spoon for six months and was subjected to mold in the showers of his housing unit. *Id*. He also claims that he was denied medical care for a sinus infection which he attributes to the mold in the showers. *Id*. He seeks injunctive and monetary relief to remedy the alleged wrongs. *Id*.

---

[1] The Clerk shall amend the docket to reflect the correct names of Defendants as indicated in this case caption.

[2] Citations are to the document and page numbers assigned by the Court's electronic case filing system.

Defendants WCDC, Warden Ruth Colbourne, Deputy Tyler, Colonel Kimble, and Corrections Officers Gardner and Richardson (Correctional Defendants) have moved to dismiss or, alternatively, for summary judgment in their favor, arguing, *inter alia*, that Jones failed to exhaust administrative remedies as to his claims. Correctional Defs.' Mot., ECF No. 17; *see* Correctional Defs' Mem., ECF No. 17-1. Defendant Nurse Dawn Chewning, R.N., H.S.A. has moved to dismiss or, alternatively, for summary judgment in her favor, arguing that Jones cannot establish that she acted with deliberate indifference to his serious medical need. Defs.' Mot. ECF No. 18; *see* Defs.' Mem., ECF No. 18-1. Jones opposes Defendants' dispositive motions, ECF No. 19,[3] and requests appointment of counsel. ECF No. 15. The pending motions may be decided without a hearing. *See* Loc. R. 105.6 (D. Md. 2018). Because Jones competently presents his claims and I am not holding a hearing in this case, appointment of counsel IS DENIED. Regarding, Jones's claim that he was denied adequate medical care, Defendant Chewning's motion, treated as a motion for summary judgment, is GRANTED. As to Jones's claims regarding the conditions of his confinement, Correctional Defendants' motion, construed as a motion for summary judgment is GRANTED, and the Complaint is DISMISSED without prejudice for failure to complete administrative exhaustion.

**Standards of Review**

Jones's claims are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[3] Jones's response was docketed as a Motion for Summary Judgment but is properly construed as a response in opposition to Defendants' motions.

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

For purposes of resolving a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). While this Court is required to liberally construe documents that self-represented litigants file and hold them to a less stringent standard than those that attorneys draft, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 US. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Rather, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); s*ee Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince*

*George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).

**Background**

Jones was a pretrial detainee housed at WCDC from January 18 to July 13, 2018. Amd. Comp., ECF No. 6, at 6. He claims that he was housed on B block, D tier, and forced to use moldy showers on that tier during his detention. *Id*. Additionally, he claims that throughout his detention he was forced to use the same plastic spoon at all meals. *Id*.

In June and July, Jones alleges that he submitted a sick call slip and was evaluated by Nurse Chewning. *Id.* Jones reported that he was suffering from sinus problems: his sinuses were flared, he had post nasal drip, and Jones opined that that he had an infection based on the color of his mucus. *Id*. Nurse Chewning advised Jones that she would submit an order for antibiotics but Jones never received them and instead was prescribed Tylenol for two days. *Id*. at 8. He claims he did not receive the Tylenol either. *Id*. He states that he had to suffer the infection until he was released on July 13, 2018. *Id*.

Correctional Defendants explain that those confined to WCDC have the right to file an internal grievance at any time. ECF No. 17-11 at 6 (Inmate Guidebook). To pursue a grievance, a detainee requests a grievance form by sending a kiosk request to Classification. *Id*. After the request is made, the detainee is provided a grievance form and an envelope; the detainee completes the form and seals it in the envelope submitting it together with any request slip or other mail. *Id*.

All grievances are routed to the Intel Unit for review, investigation where needed, and resolution. *Id*.

On January 19, 2018, Jones went through Inmate Orientation which includes a discussion of the Inmate Guidebook, which explains WCDC's grievance process. ECF No. 17-10 (Inmate Orientation Acknowledgement); ECF No. 17-11 (Inmate Guidebook). Jones acknowledged attending orientation and receiving information regarding operation of the kiosk as well as the inmate handbook. ECF No. 17-10 at 2.

During his incarceration at WCDC, Jones was housed in a unit with a kiosk. ECF No. 17-6 (Cell Transfer Log); ECF No. 17-7 (Kiosk Request Report). Jones used the kiosks to make 49 requests over 28 weeks concerning a variety of issues. ECF No. 17-7.

On one occasion, June 8, 2018, Jones used the kiosk to request forms necessary to initiate an inmate grievance. ECF No. 17-7 at 12. Staff responded on June 11, 2018, stating "I gave you two on Friday, Did you need more?" *Id*. That day, Jones responded, through the kiosk, that he did not need additional forms, the forms had been given to him. *Id*. at 13.

On June 7, 2018, through the kiosk, Jones requested to see a nurse and was scheduled for a sick call the following day. Aff. Chewning, ECF No. 19-4, ¶¶ 4, 5. When Chewning examined Jones on June 8, 2018, he complained of a stuffy nose, post nasal drip and a headache. *Id*., ¶ 6. He requested an antibiotic for a sinus infection which he claimed began three days earlier. *Id*., ¶ 7. After examining Jones, Chewning determined that he did not have a sinus infection, his lungs were clear and no drainage was noted. *Id*., ¶ 8. Chewning observed that Jones was more concerned about being weighed than about his sinus complaint and became agitated when Chewning advised him that she could not weigh him because clinic was being conducted and his weight was not relevant to the basis for his sick call. *Id*., ¶¶ 9-11. Chewning ordered Tylenol to treat Jones'

5

headache. *Id*., ¶ 12. He did not submit any additional request for sick call visits regarding these complaints. *Id*., ¶ 13. He did, however, submit kiosk complaints that he did not receive any medication. ECF No. 17-7 at 13–14.

During his detention at WCDC, Jones filed one grievance. On June 9, 2018, he filed a grievance regarding Officer Abner's failure to relay his concerns regarding Nurse Chewning. The grievance was dismissed as unsubstantiated. ECF No. 17-8 at 2 (Inmate Grievance form).

**Analysis**

Appointment of Counsel

Jones requests appointment of counsel based on his incarcerated status and lack of knowledge of the law. ECF No. 15. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct*., 490 U.S. 296, 298 (1989). Exceptional circumstances may be present where a litigant "is barely able to read or write," *id*. at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).

Jones is a capable litigant who has clearly explained his claims. As noted, a hearing is not necessary, and none of Jones's claims will proceed. Therefore, appointment of counsel is not warranted. *See Whisenant*, 739 F.2d at 162–63; Berry, 587 F. Supp. 2d at 723.

Exhaustion

Correctional Defendants raise the affirmative defense that Jones has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id*. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion")). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624-25 (D. Md. 2015) (internal citation omitted).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S. Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856–57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. The *Ross* Court explained that an administrative remedy is

available for purposes of the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Exhaustion is also required even though the full relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741. Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529–30. The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. These are when (1) the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is so "opaque" as to become "practically speaking, incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–60.

Here, although Jones claims that he sought inmate grievance forms while incarcerated at WCDC and they were not provided to him (Compl. at 2, Am. Compl. at 5), the record evidence clearly contradicts his claim. Jones had regular access to the kiosk system where all concerns and requests were to be logged, including requests for grievance forms. Despite using the kiosk on a nearly weekly basis to make requests including changes to his cell assignment, access to the law library, changes to his visitor list, to call his attorney, to order special food items, to request religious materials, and to access sick call and complain about medical fees, on only one occasion did he use the kiosk to request grievance forms. Those forms were provided to him. The grievance he filed did not concern any of the claims raised in this compliant. Jones has failed to properly exhaust administrative remedies as to his conditions of confinement claims. Consequently, his conditions of confinement claims are dismissed without prejudice.

Medical Care

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Hill v. Nicodemus*, 979 F.2d 987, 990–91 (4th Cir. 1992); *see also Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating, *inter alia*, that if the decedent "was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care to *detainees* who require it") (emphasis in *Brown* ) (internal quotation marks omitted; citation omitted) (citing, *inter alia*, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); and *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979)).

A claim of denial of adequate medical care, whether lodged under the Eighth Amendment or the Fourteenth Amendment, requires a court to analyze the same issue: whether there was deliberate indifference to a serious medical need. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citing *Martin v. Gentile,* 849 F.2d 863, 871 (4th Cir. 1988)). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

A medical condition is objectively serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk

to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto*, 841 F.3d at 225 (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish a Constitutional violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Jones cannot demonstrate that he suffered a serious medical need. *See Lopez v. Robinson*, 914 F.2d 486, 490–91 (4th Cir. 1990) (allegations of stress, anxiety, and physical harm consisting of sinus problems and headaches did not amount to "harm of constitutional magnitude"); *Mathias v. Simkins*, 2007 WL 1577336, at *3 (W.D. Va. May 31, 2007) (dismissing a conditions of confinement claim for failure to demonstrate injury because "[Mathias] alleges a sinus infection and difficulty breathing, neither of which are serious or significant physical injuries that afford relief under the Constitution"); *Price v. Daly*, 2006 WL 2946492 at *5 (D.S.C. Oct. 13, 2006) (holding headaches and a sinus infection were not serious medical needs); *Odighizuwa v. Ray*, 2006 WL 3041266, at *4 (W.D.Va. Oct. 24, 2006) ("[H]eadaches, fatigue, itchiness, sneezing,

chest pains, occasional vomiting, and emotional distress [ ] are not sufficiently serious to rise to the level of [a Constitutional] violation.").

Even if the Court assumed Jones's condition constituted a serious medical need, his allegation that Chewning refused to provide him antibiotics is nothing more than a disagreement between Jones and Chewning about the type of care he should receive. Such a disagreement falls short of showing that Chewning subjectively acted with a "sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003).

Further, as to any claim that Correctional Defendants denied Jones adequate medical care, non-medical jail employees may rely on the opinion of the medical staff as to the proper course of an inmate's treatment and cannot be held liable under the deliberate-indifference standard unless they were personally involved with a denial of treatment or deliberately interfered with the medical staff's treatment. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

## CONCLUSION

In sum, Jones's motion for appointment of counsel, ECF No. 15, is DENIED. Defendants' motions, ECF Nos. 17 and 19, treated as motions for summary judgment, are GRANTED. Jones's claims regarding the conditions of his confinement are dismissed without prejudice for failure to exhaust administrative remedies. Summary judgment is granted on Jones's claim regarding denial of medical care. A separate Order follows.

__March 9, 2020_____  ___/S/_____
Date                    Paul W. Grimm
                        United States District Judge